IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TANGELO IP, LLC<br><br>Plaintiff,<br><br>v.<br><br>ARBONNE INTERNATIONAL, LLC<br><br>Defendant. | Civil Action No. _______________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

For its Complaint, Plaintiff Tangelo IP, LLC ("Tangelo"), by and through the undersigned counsel, alleges as follows:

**THE PARTIES**

1. Tangelo is a Texas limited liability company with a place of business located at 555 Republic Drive, 2nd Floor #42, Plano, Texas 75074.

2. Defendant Arbonne International, LLC is a Delaware company with, upon information and belief, a place of business located at 9400 Jeronimo Road, Irvine, California 92618.

3. By forming its limited liability company in Delaware, Defendant has a permanent and continuous presence in Delaware.

**JURISDICTION AND VENUE**

4. This action arises under the Patent Act, 35 U.S.C. § 1 *et seq.*

5. Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338.

6. Upon information and belief, Defendant conducts substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements

alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in this district.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b).

## BACKGROUND

8. Tangelo's closely related operating entity is Tangelo, LLC (formerly known as Active8media, LLC), a developer of advanced interactive and shoppable image products. Tangelo's technology already is used by many major publishers to drive sales and connect readers and customers. Tangelo, LLC was awarded a MAX Marketing Award for its interactive image technology. It was also showcased on CNBC's Power Lunch for the implementation of Vogue Magazine's interactive ad images and the resulting highest revenue issue in Vogue's 110-year history.

9. Among other things, Tangelo, LLC operates Tangelo Images, a user interface application for creating interactive brand and user-generated photos. In addition, Tangelo, LLC launched Tangelo Tags within the Facebook app center to allow brand and individual users to create interactive and shoppable photos within Facebook’s timeline. Tangelo, LLC has been recognized as a TAG Top 40 - Georgia's Most Innovative Companies.

10. Todd Mannik is a co-founder of Tangelo, LLC. Since at least 1999, Mr. Mannik has dedicated his career to focusing on the interactivity of photo images and the discovery of what's "inside" a photo. Mr. Mannik is the co-inventor of several patents, including the patent-in-suit, which represent pioneering advances in the transformation of images into interactive and shoppable images online.

**THE PATENT-IN-SUIT**

11. On April 23, 2013, U.S. Patent No. 8,429,005 (the "'005 patent"), entitled "Method for Determining Effectiveness of Display of Objects in Advertising Images," was duly and lawfully issued by the U.S. Patent and Trademark Office. A true and correct copy of the '090 patent is attached hereto as Exhibit A.

12. Mr. Mannik is the first listed co-inventor on the patent-in-suit, which is U.S. Patent No. 8,429,005 (the "'005 patent"). The '005 patent is a continuation-in-part of U.S. Patent No. 6,535,889, which is a continuation-in-part of U.S. Patent No. 6,557,006. The earliest filing in the priority chain leading up to the '005 patent is U.S. Patent Application No. 09/406,171, filed on Sep. 23, 1999.

13. The technology recited in the claims of the '005 patent provides an inventive concept and does not claim an abstract idea. The inventive concept greatly enhances and facilitates technological methods and apparatuses which comprise providing of electronic and interactive catalogs comprising replications of product images appearing in a corresponding physical catalogs, wherein the electronic and interactive replications include selectable portions corresponding with the image replications, and wherein selection of the selectable portions provides additional product information and enables a user to initiate an online purchase of the product.

14. One inventive component of the '005 patent is improving electronic catalogs in ways that are necessarily rooted in computer technology to overcome problems specifically arising in the realm of computer networks, including the Internet. The claims recite an invention that was not merely a routine or conventional use of the Internet.

15. The technology claimed in the ‘005 patent does not preempt all types of electronic

catalogs or anything else. For example, the prior art cited on the face of the '005 patent remains available for practice by the Defendant, and the '005 patent claims do not preempt practice of those prior art methods.

16. The '005 patent claims cannot be practiced by a human alone and there exists no human analogue to the methods claimed in the '005 patent. The claims are specifically directed to, *inter alia*, the electronic and interactive replication of product images appearing in a corresponding physical publication page, wherein the electronic and interactive replications include selectable portions corresponding with duplications of the appearance of the product, and wherein selection of the selectable portions provides additional product information and enables a user to initiate an online purchase of the product. These things exist only in the context of computers.

17. The claims of the '005 patent specifically address a technological problem – inability to use a computer to locate additional information about products shown in visual media sources, such as failure to provide instantaneous product descriptions and separate enlarged views of each of the products shown within the image – via an unconventional technological solution. For example, the claimed graphical user interface includes prescribed functionality directly related to the graphical user interface's structure that addresses and resolves a specifically identified problem in the prior art

18. In further detail, printed publications in traditional media, such as newspaper or magazine advertisements could not be associated with, or "hot-linked" to, additional sources of information like electronic files, Ex. A at 1:46-50, and conventional visual media present in some electronic publications (including video sources) on the Internet did not provide a breakdown of products forming the digital or electronic image contained within the electronic

publication. *Id.* at 2:32-36. The claims of the '005 patent describe an approach to accomplishing a specific, practical, and useful improvement to traditional or conventional visual media, by creating a graphical user interface. *Id.* at 3:3-4:11.

19. The claims of the '005 patent do not perform some fundamental practice long prevalent in our system, as confirmed by the specification's criticism of prior art and the explanation as to how the claimed inventions solve the prior art's inadequacies. *See id.* at 1:40-2:50, 3:3-4:11.

20. The '005 patent's claims entail an unconventional technological solution to a technological problem. The '005 patent describes how its particular arrangements of elements is a technical improvement over prior art, *id.* at 3:3-4:11, and the particular arrangements are claimed.

21. The claims of the '005 patent have an obvious technological effect: they aid in the technological goal of creating a graphical user interface that displays an interactive electronic representation of a corresponding visual media object that can associate a visual media object contained within an electronic publication to an interactive electronic representation of a visual media object. These are not claims that contain mere token references to a computer or its use; instead, these claims are inherently tied to computers and the Internet.

22. The claims of the '005 patent improve the computer functionality. The '005 patent explains, for example, that the prior art's "severe limitations on the depth of content provided by traditional visual media can be very frustrating for readers, viewers, and in particular, shoppers," *id.* at 1:53-55, and "[t]he reader may turn to a web search engine for assistance, but without knowing the manufacturer of [the product shown] or other information, any Internet search by the reader is likely to be futile." *Id.* at 1:63-66. Likewise, "[c]onventional electronic

publications generally do not provide instantaneous product descriptions and separate enlarged views of each of the products shown within the image", *id.* at 2:37-40, and if the reader seeks additional information about products shown in the image, "the reader may need to initiate an Internet or web search to ascertain" more information and "[s]uch an Internet search could be rather time consuming without any guarantee of success." *Id.* at 2:43-50. The '005 patent thus is directed to solving this Internet-centric problem by creating a graphical user interface that displays an interactive electronic representation of a corresponding visual media object that can associate a visual media object contained within an electronic publication to an interactive electronic representation of a visual media object.

23. The prior art to the '005 patent did not permit the usability permitted by the claimed inventions of the '005 patent. When the limitations of the '005 patent's claims are taken together as an ordered combination, the claims recite an invention that is not merely the routine or conventional use of the Internet or a computer replicating a printed publication.

24. The '005 patent's claims do not preempt a broad building block that would unduly obstruct innovation. Instead, the claims describe a very specific means for a computer to display a graphical user interface that includes an interactive and electronic replication of a corresponding physical publication page or a portion thereof. There is no risk that the claims could foreclose innovation by others.

25. Tangelo is the assignee and owner of the right, title and interest in and to the '005 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

**<u>COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,429,005</u>**

26. Tangelo repeats and realleges the allegations of paragraphs 1 through 25 as if

fully set forth herein.

27. Without license or authorization and in violation of 35 U.S.C. § 271(a), Defendant is liable for infringement of the '005 patent by practicing, making, using, importing, offering for sale, selling and/or hosting methods and computer readable media for methods, apparatuses, and computer readable media, including associated with websites and/or apps, for providing an electronic and interactive replication of product images appearing in a corresponding physical publication page.

28. More specifically and upon information and belief, Defendant's online catalog system for providing interactive replications of product images appears in a corresponding physical publication page.


Set Special

Anti-Aging Moisturizer Broad Spectrum SPF 15 Sunscreen
To serve and protect. Refreshing, lightweight moisturizing lotion improves the appearance of lines, wrinkles, firmness and suppleness. Protects against UVA/UVB rays with broad spectrum 15. | 1.7 fl. oz., #6513; SRP $52 | PC $41.60 | QV 52
Active Ingredient:zinc oxide 4.95% | Key Ingredients:algae extract, vitamin C, malachite extract, Japanese pagoda tree flower extract

Eye Repair Cream
An easy step to improving your outlook. Just a few dabs to help reduce the appearance of puffiness, dark circles, fine and deep lines and wrinkles around the eyes. Your skin will look renewed, de-stressed and ready for success. | 0.5 fl. oz., #6517; SRP $50 | PC $40 | QV 50
Key Ingredients:algae extract, vitamin C, malachite extract, Japanese pagoda tree flower extract

RE9 Advanced for Men Set
Set your clock back with this anti-aging trio. Includes Micro-Exfoliating Cleanser, Anti-Aging Moisturizer Broad Spectrum SPF 15 Sunscreen, and Eye Repair Cream. #6520; SRP $122 | PC $97.60 | QV 122

ASK YOUR INDEPENDENT CONSULTANT OR VISIT ARBONNE.COM FOR INFORMATION ON AVAILABLE SPECIAL OFFERS AND REWARDS. 37

Print Catalog.




http://www.arbonne.com/discover/catalogue/index.html#37 ("Online Catalog"). Defendant uses a computer system that associates a page number of a physical publication page with an electronic and interactive replication of at least a portion of the physical publication page, and the electronic catalog comprises exact duplications of the at least two different products from the physical publication.




Print Catalog.



Online Catalog. The electronic catalog includes a first selectable portion corresponding with duplication of the appearance of a first product of the at least two different products and selection of the first selectable portion provides additional information about the first product and enables a user to initiate an online purchase of the first product.




On mouseover, a clickable box appears




Online Catalog.




http://www.arbonne.com/Pws/homeoffice/store/AMUS/catalog/RE9-Advanced-for-Men,201.aspx.



Anti-Aging Moisturizer SPF 15 Sunscreen #6513

#6513 RE9 Advanced® for Men

**$52.00** $41.60 PC

QUANTITY 1 ADD TO BAG

✔ In Stock

To serve and protect. Refreshing, lightweight moisturizing lotion improves the appearance of lines, wrinkles, firmness and suppleness. Protects against UVB/UVA rayswith broad spectrum 15. |1.7 fl. oz.



Meet the Product Sheet

Ingredients

How to Use

Clinical Results

For external use only. Keep out of reach of children.

**For sunscreen use:**

- apply liberally and evenly 15 minutes before sun exposure
- reapply at least every 2 hours
- use a water resistant sunscreen if swimming or sweating

**Sun Protection Measures.**

Spending time in the sun increases your risk of skin cancer and early skin aging. To decrease this risk, regularly use a sunscreen with a broad spectrum SPF value of 15 or higher and other sun protection measures including:

http://www.arbonne.com/Pws/homeoffice/store/AMUS/product/Anti-Aging-Moisturizer-SPF-15-Sunscreen-6513,8812,201.aspx. The electronic catalog includes a second selectable portion corresponding with duplication of the appearance of a second product of the at least two different products and selection of the second selectable portion provides additional information about the second product and enables a user to initiate an online purchase of the second product.




On mouseover, a clickable box appears




Online Catalog.




http://www.arbonne.com/Pws/homeoffice/store/AMUS/catalog/RE9-Advanced-for-Men,201.aspx.




http://www.arbonne.com/Pws/homeoffice/store/AMUS/product/Eye-Repair-Cream-6517,8816,201.aspx. A web server application is executed by the host computer and it provides the electronic and interactive representation to a computing device of a user in response to receiving input representing the page number.




Online Catalog.

29. Tangelo is entitled to recover from Defendant the damages sustained by Tangelo as a result of Defendant's infringement of the '005 patent in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

30. Defendant's use of Tangelo's patented technology has caused, is causing and will continue to cause Tangelo irreparable harm unless enjoined by this Court.

## JURY DEMAND

Tangelo hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Tangelo requests that this Court enter judgment against Defendant as follows:

A. An adjudication that Defendant has infringed the '005 patent;

B. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or participation with it, from making, using, offering to sell, or selling in the United States or importing into the United States any devices, methods or systems that infringe any claim of the '005 patent, or contributing to or inducing the same by others;

C. An award of damages to be paid by Defendant adequate to compensate Tangelo for Defendant's past infringement of the '005 patent and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

D. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Tangelo's reasonable attorneys' fees; and

E. An award to Tangelo of such further relief at law or in equity as the Court deems just and proper.

Dated: February 23, 2018

STAMOULIS & WEINBLATT LLC

*/s/ Richard C. Weinblatt*

Stamatios Stamoulis #4606
Richard C. Weinblatt #5080
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540
Facsimile: (302) 762-1688
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Plaintiff*
*Tangelo IP, LLC*